## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **RAMESH SHARMA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 10-1033 (GK)** |
| ) | |
| **DISTRICT OF COLUMBIA,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

## MEMORANDUM OPINION

Plaintiff, Ramesh Sharma, a former employee of the District of Columbia Office of Contracting & Procurement ("OCP"), brings this action against Defendant, District of Columbia, for retaliation in violation of the D.C. Whistleblower Protection Act ("DCWPA"), D.C. Code § 1-615.51 et seq., and the federal False Claims Act ("FCA"), 31 U.S.C. § 3730. This matter is presently before the Court on Defendant's Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6). Upon consideration of the Motion, Opposition, Reply, and the entire record herein, and for the reasons set forth below, the Motion to Dismiss is **denied in its entirety**.

## I.    Background

In January 2003, Plaintiff was hired as a Senior Contract Specialist by the OCP, an agency of the District of Columbia government. Compl. ¶¶ 3, 8. Beginning in 2005 and continuing until early 2009, Plaintiff alleges that various D.C. employees pressured him to approve contracts that were fraudulent, wasteful, and violated D.C. and federal laws and regulations. Id. ¶¶ 10-111.

Plaintiff refused to approve these contracts and filed a series of whistleblower complaints with various D.C. and federal agencies. Id. ¶¶ 10-94. In alleged retaliation for his whistleblowing activities, Plaintiff was allegedly demoted, stripped of his contracting officer authority, deprived of various employment opportunities within the D.C. government, and otherwise discriminated against. Id. ¶¶ 30, 40-100, 109-11.

In March 2009, the construction contracting group at OCP, where Plaintiff worked, was moved to the D.C. government's Office of Property Management ("OPM"). Id. ¶¶ 103, 105. In connection with this move, Plaintiff's co-workers were transferred to other positions within OCP or were sent to the new OPM construction contracting division. Id. ¶¶ 119-20. Plaintiff, by contrast, received a notice of Reduction in Force ("RIF") shortly after the reorganization. Id. ¶ 115. This notice, which was dated May 18, 2009, was received by Plaintiff on May 29, 2009, and was effective as of June 19, 2009. Id. ¶ 115-16. Plaintiff was the only member of the OCP construction contracting group who was subjected to a RIF. Id. ¶ 118. On June 3, 2009, Plaintiff was placed on administrative leave with pay. Id. ¶ 122.

On June 11, 2009, Plaintiff filed a whistleblower complaint and a complaint about the RIF with the D.C. Inspector General's Office. Id. ¶ 123. On June 19, 2009, Plaintiff's RIF went into effect and he was terminated from employment. Id. ¶ 124. On July

16, 2009, Plaintiff appealed the RIF decision to the D.C. Office of Employee Appeals ("OEA"). Id. ¶ 126. Plaintiff withdrew his appeal without prejudice on April 11, 2010. Id. ¶ 127. Subsequently, the OEA dismissed Plaintiff's appeal with prejudice on April 13, 2010. Id. ¶ 128.

On June 18, 2010, Plaintiff filed the instant Complaint against the D.C. government [Dkt. No. 1]. On September 1, 2010, Defendant filed its Motion to Dismiss all of Plaintiff's claims ("Def.'s Mot.") [Dkt. No. 5]. On October 4, 2010, Plaintiff filed his Opposition to Defendant's Motion to Dismiss ("Plaintiff's Opp'n") [Dkt. No. 7]. On October 21, 2010, Defendant filed its Memorandum in Reply to the Plaintiff's Opposition to the District's Motion to Dismiss ("Def.'s Reply") [Dkt. No. 9].

## II. Standard of Review

Under Rule 12(b)(6), a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face" and to "nudge[] [his or her] claims across the line from conceivable to plausible." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "[A] complaint [does not] suffice if it tenders naked assertions devoid of further factual enhancement." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (internal quotations omitted) (citing Twombly, 550 U.S. at 557). Instead, the complaint must plead facts that are more than "merely consistent with" a defendant's liability; "the pleaded factual content [must] allow[] the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1940 (citing Twombly, 550 U.S. at 556).

"[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Twombly, 550 U.S. at 563. Under the standard set forth in Twombly, a "court deciding a motion to dismiss must . . . assume all the allegations in the complaint are true (even if doubtful in fact) . . . [and] must give the plaintiff the benefit of all reasonable inferences derived from the facts alleged." Aktieselskabet AF 21. November 2001 v. Fame Jeans Inc., 525 F.3d 8, 17 (D.C. Cir. 2008) (internal quotations and citations omitted). See Tooley v. Napolitano, 586 F.3d 1006, 1007 (D.C. Cir. 2009) (declining to reject or address the government's argument that Iqbal invalidated Aktieselskabet).

## III. Analysis

Defendant argues that Plaintiff fails to state a claim for relief under both the DCWPA and the FCA.

With regard to the DCWPA claim, Defendant raises substantive as well as procedural challenges. In bringing its substantive challenge, Defendant argues that many of Plaintiff's allegations are not covered by the DCWPA. In terms of its procedural challenge, Defendant makes the over-arching claim that recent amendments to the DCWPA do not apply to incidents, such as Plaintiff alleges, that occurred before the amendments went into effect. In the

alternative, Defendant argues that Plaintiff's DCWPA claim must be dismissed as preempted by the D.C. Comprehensive Merit Personnel Act ("CMPA"), D.C. Code § 1-601.01 et seq.

## A. Plaintiff's DCWPA Claim

The DCWPA is intended to "[e]nsure that the rights of [D.C.] employees to expose corruption, dishonesty, incompetence, or administrative failure are protected" and to shield these employees "from reprisal or retaliation for the performance of their duties." D.C. Code § 1-615.51(5),(7).

Under the DCWPA, D.C. employees have the right "to disclose information unlawfully suppressed, information concerning illegal or unethical conduct which threatens or which is likely to threaten public health or safety or which involves the unlawful appropriation or use of public funds." D.C. Code § 1-615.58(2). The statute obligates these employees to "make all protected disclosures concerning any violation of law, rule, or regulation, contract, misuse of government resources . . . as soon as the employee becomes aware of the violation or misuse of resources." D.C. Code § 1-615.58(7). The DCWPA prohibits supervisors from taking or threatening to take "prohibited personnel actions"[1] or to otherwise retaliate against an employee because of her protected

---

[1] The DCWPA defines a "prohibited personnel action" as including, among other things, a "recommended, threatened, or actual termination, demotion, suspension, or reprimand." D.C. Code § 1-615.52.

disclosures or her refusal to comply with an illegal order. D.C. Code § 1-615.53(a).

### 1. Defendant's Substantive Argument Misperceives Plaintiff's Claim

In its Motion, Defendant argues that "many" of the allegations raised by Plaintiff "are not 'prohibited personnel actions' as defined by the [DCWPA]." Def.'s Mot. 5 n.1. This argument, in turn, rests on the theory that Plaintiff's DCWPA claim relies on numerous separate violations of the statute. However, as reflected in the Complaint, Plaintiff's claim is, in fact, based on one and only one incident, namely, the RIF. Compl. ¶ 141 ("By laying off plaintiff, defendant retaliated against him because of his whistle-blowing activities and thereby violated the D.C. Whistleblower Protection Act . . . ."); Plaintiff's Opp'n 23-24.

While the Complaint does contain numerous allegations that Plaintiff made protected disclosures and was retaliated against for his whistleblowing activities, those incidents are not the basis of his DCWPA claim. Rather, these are <u>factual</u> allegations presented to support Plaintiff's sole <u>legal</u> claim under the statute, namely that the RIF was retaliatory. With respect to this RIF, Defendant does not challenge its status as a "prohibited personnel action" under the DCWPA.

Accordingly, the Court **denies** Defendant's substantive challenge to Plaintiff's DCWPA claim, which is based solely on the

RIF. The Court will now turn to Defendant's procedural arguments against Plaintiff's DCWPA claim.

### 2. The 2010 Amendments to the Statute of Limitations and Pre-Suit Notice Requirement Are Retroactive

As already noted, the parties disagree about the applicability of the Whistleblower Protection Amendment Act of 2009, which went into effect on March 11, 2010 ("2010 Amendments"), 2010 D.C. Legis. Serv. 18-117 (West), and amended the DCWPA originally enacted in 1998. Def.'s Mot. 3-6; Plaintiff's Opp'n 26-28.

First, the 2010 Amendments changed the DCWPA's statute of limitations from "1 year after a violation occurs or within 1 year after the employee first becomes aware of the violation" to "3 years after a violation occurs or within one year after the employee first becomes aware of the violation, whichever occurs first." 2010 Amendments, Sec. 3(c).

Second, the 2010 Amendments eliminated the DCWPA's pre-suit notice requirement, contained in D.C. Code § 12-309 ("12-309 notice"), that had required employees to give written notice to the D.C. Mayor's office "within six months after the injury or damage was sustained," providing the "approximate time, place, cause, and circumstances of the injury or damage." 2010 Amendments, Sec. 2(c).

Defendant argues that because the 2010 Amendments lack clear language supporting their retroactive application, this Court "should apply the well established rule disfavoring retroactive application[] of statutes." Def.'s Mot. 4. In response, Plaintiff

claims that D.C. and federal case law establishes that procedural amendments, such as those involved here, may generally be applied retroactively. Plaintiff's Opp'n 26-27. Plaintiff also points to recent case law from the D.C. courts that has specifically found the DCWPA amendments to the statute of limitations and pre-suit notice requirement to be retroactive. Id. at 26; Plaintiff Ex. 5 - Notice of Supplemental Authority (Nov. 30, 2010) [Dkt. No. 11]: Davis v. District of Columbia, No. 2005-CA-8772 B (D.C. Super. Ct. Nov. 23, 2010).

It is well-settled that on issues of District of Columbia law this Court defers to the decisions of the local D.C. courts. Williams v. Martinez, 586 F.3d 995, 1001 (D.C. Cir. 2009). As Plaintiff correctly points out, recent D.C. case law does indeed establish that the 2010 Amendments to the statute of limitations and § 12-309 notice requirement are retroactive.

In Cusick v. District of Columbia, No. 2008-CA-6915 (D.C. Super. Ct. Aug. 17, 2010), the D.C. Superior Court held, in an oral opinion, that the amendments to the DCWPA's statute of limitations and § 12-309 notice requirement were procedural. Plaintiff Ex. 3 (Oct. 4, 2010) [Dkt. No. 7-3] - Transcript of August 17, 2010 Cusick v. District of Columbia, Tr. 23:11-30:25. Therefore, the court concluded that the 2010 Amendments should be applied retroactively to a DCWPA claim alleging retaliation that occurred in 2007. Id. In holding that the Amendments were procedural in

nature, the court stated that "if a procedural statute is amended the rule is that the amendment applies to pending proceedings as well as to those instituted after the amendment . . . ." Id. at Tr. 29:9-12. The court further held that, in its view, "the committee report [on the 2010 Amendments] is clear . . . that the statute is to apply retroactively." Id. at Tr. 27:1-2.

In Davis, the D.C. Superior Court also held that the 2010 Amendments to the statute of limitations and § 12-309 notice requirement were retroactive and therefore applied to a DCWPA claim involving events occurring in 2001 and 2004. In reaching this conclusion, the court relied on the distinction between substantive and procedural amendments drawn in Landgraf v. USI Film Products, 511 U.S. 244, 114 S. Ct. 1483 (1994). Davis, No. 2005-CA-8772 B, slip op. at 4. In keeping with Landgraf, the court concluded that procedural statutes "may often be applied to lawsuits arising before their enactment without raising concerns about retroactivity." Id. at 5 (internal quotations and citations omitted). Based upon Landgraf, as well as a review of the Amendments' legislative history, the court concluded that changes to the DCWPA's statute of limitations and § 12-309 notice requirement are procedural and therefore retroactive. Id. at 4-7.[2]

_____

[2] Several recent decisions from this District Court have specifically held that the change to the pre-suit notice requirement is procedural and therefore retroactive. Williams v. Johnson, 06-cv-02076, slip op. at 9-11 (D.D.C. May 23, 2011) (continued...)

In briefing on the pending Motion to Dismiss, Defendant fails to even address this case law or to otherwise respond to Plaintiff's claim that the amendments are procedural.[3] However, in its Reply to the Metropolitan Washington Employment Lawyers Association's ("MWELA") amicus brief filed in this case, Defendant does challenge Plaintiff's claim regarding the § 12-309 notice provision. District of Columbia's Reply to MWELA's Amicus Curiae Brief, 3 (Feb. 16, 2011) [Dkt. No. 17]. In its Reply, Defendant argues that because elimination of the § 12-309 notice requirement amounts to an "unconditional waiver of sovereign immunity" that has "changed the terms under which [the District of Columbia] is subject to suit," the § 12-309 notice amendment is substantive, not procedural, and, therefore, should not be applied retroactively.

---

[2](...continued)
(holding that amendment to DCWPA pre-suit notice requirement is procedural and therefore retroactive); Bowyer v. District of Columbia, 09-cv-0319, 2011 WL 1603257 at *4 (D.D.C. Apr. 29, 2011) (same); Winder v. Erste, 03-cv-2623, slip op. at 4-5 (D.D.C. Mar. 7, 2011)(same). At least one judge in this District Court has, however, held that the 2010 Amendments as a whole are not retroactive. Payne v. District of Columbia, 741 F. Supp. 2d 196, 211 (D.D.C. 2010). In Davis, No. 2005-CA-8772 B, slip op. at 7 n.6, the D.C. Superior Court distinguished Payne, observing that "[t]he opinion in Payne . . . reached these conclusions without considering the distinction between retroactive application of substantive and procedural laws, the legislative history of the DCWPA amendments, or the District of Columbia case law . . . ."

[3] Although the Davis case was issued after briefing on the Motion was complete, the Cusick case was included in Plaintiff's Opposition brief. Plaintiff's Opp'n 26. Defendant did not address this case in its reply brief or generally respond to Plaintiff's argument regarding the procedural nature of the DCWPA amendments applicable to this matter.

Id.

The sovereign immunity defense is jurisdictional and can, therefore, be raised at any time. FDIC v. Meyer, 510 U.S. 471, 475, 114 S. Ct. 996 (1994); JB Pictures, Inc. v. Dep't of Defense, 86 F.3d 236, 238 (D.C. Cir. 1986). Consequently, although Defendant presented this claim for the first time in reply to an amicus brief, the argument is properly before this Court.

As case law establishes, Defendant's sovereign immunity argument lacks merit. The D.C. courts have clearly held that the pre-suit notice provision, which is contained in D.C. Code § 12-309, does not constitute a waiver of sovereign immunity. Tucci v. District of Columbia, 956 A.2d 684, 695-96 (D.C. 2008). Rather, pre-suit notice "is a condition precedent which, if not met, will prevent the destruction of sovereign immunity. . . . A waiver of sovereign immunity must be found in some other source [like] a separate statute . . . ." Id. at 696 (internal quotations and citations omitted). With regard to DCWPA claims, the D.C. government waived its sovereign immunity when it first passed the statute in 1998. Williams, 06-cv-02076, slip op. at 11; Bowyer, 2011 WL 1603257 at *4. Consequently, the 2010 amendment to the DCWPA's pre-suit notice requirement did not create a substantive change to the D.C. government's liability. Bowyer, 2011 WL 1603257 at *4. Rather, it was a procedural amendment and therefore subject to retroactive application. Williams, 06-cv-02076, slip op. at 11;

Bowyer, 2011 WL 1603257 at *4.

In line with applicable D.C. law, this Court holds that the 2010 Amendments to the DCWPA's statute of limitations and § 12-309 notice provision are procedural and therefore retroactive. The Court will now consider whether these Amendments preclude dismissal of Plaintiff's DCWPA claim.

### a.   Statute of Limitations

Under the 2010 Amendments, a civil action is timely if instituted "within 3 years after a violation occurs" or "within one year after the employee first became aware of the violation," whichever occurs first. D.C. Code § 1-615.54 (a)(2). According to the Complaint, on May 29, 2009, Plaintiff, who was on sick leave at the time, received a RIF notice. Compl. ¶ 116. The notice was dated May 18, 2009. Id. ¶ 115. On June 19, 2009, Plaintiff's RIF "became effective and he was terminated from employment." Id. ¶ 124.

There is no dispute that a one year statute of limitations applies to this case, but what is disputed is the date on which this limitations period begins. Plaintiff argues that the limitations period started on June 19, 2009, the effective date of the RIF. Plaintiff's Opp'n 23-25. Defendant argues that the statute of limitations began to run either on May 18, 2009, the date the RIF notice was issued, or on May 29, 2009, the date Plaintiff

received the notice.[4] Def.'s Mot. 3-5; Def.'s Reply 1-2.

To resolve this issue, the Court must determine, as a matter of law, when Plaintiff's discharge from employment occurred. According to D.C. and federal case law, termination occurs at "the time of the <u>discriminatory act</u>, not [at] the point at which the <u>consequences</u> of the act become painful." <u>Stephenson v. American Dental Ass'n</u>, 789 A.2d 1248, 1250 (D.C. 2002) (quoting <u>Chardon v. Fernandez</u>, 454 U.S. 6, 8, 102 S. Ct. 28 (1981) (per curiam)) (emphasis in original). Accordingly, a plaintiff is terminated from employment when she receives "final, unequivocal, and definite" notice of her termination, even if the effective date occurs later. <u>Del. State College v. Ricks</u>, 449 U.S. 250, 259, 101 S. Ct. 498 (1980); <u>Cesarano v. Reed Smith, LLP</u>, 990 A.2d 455, 465 (D.C. 2010) (quoting <u>Barrett v. Covington & Burling, LLP</u>, 979 A.2d 1239, 1253 (D.C. 2009)); <u>Stephenson</u>, 789 A.2d at 1252-53. A notice of termination will not be final, unequivocal, and definite if the possibility of returning to work remains open. <u>Cesarano</u>, 990 A.2d at 467.

In this case, Plaintiff concedes that he received notice of the RIF on May 29, 2009. The Complaint is, however, silent as to

---

[4] Defendant argues that the statute of limitations bars <u>all</u> allegations raised by Plaintiff that occurred prior to these dates. Def.'s Mot. 4-5; Def.'s Reply 1-2. However, as discussed <u>supra</u>, this argument misconstrues Plaintiff's DCWPA claim, which is based only on his RIF. Consequently, the Court will only address Defendant's statute of limitations argument regarding the RIF.

the specific content of the RIF notice.[5] In briefing on the pending Motion to Dismiss, Plaintiff argues that the RIF notice "merely proposed" termination because Plaintiff "was still employed and on the payroll until June 19. . . . [and] the termination was not effective until June 19." Plaintiff's Opp'n 24. Plaintiff also argues that since he "could not have appealed his termination to the Office of Employee Appeals until after June 19" the limitations period should not begin before that date. Id.

Because this matter is raised in a Rule 12(b)(6) motion, the court must "resolve '[a]ll factual doubts . . . and all inferences . . . in favor of the plaintiff.'" U.S. ex rel. Williams v. Martin Baker Aircraft Co., 389 F.3d 1251, 1261-62 (D.C. Cir. 2004) (quoting Tele-Commc'ns of Key West, Inc. v. United States, 757 F.2d 1330, 1334-35 (D.C. Cir. 1985)). Accordingly, because there is no evidence that the RIF notice gave "final, unequivocal, and definite" notice of termination, the Court concludes that Plaintiff's termination did not occur until he was finally discharged from work on June 19, 2009. Consequently, Plaintiff's DCWPA claim, which was filed on June 18, 2010, falls within the one year statute of limitations.

---

[5] Curiously, neither party submitted a copy of the RIF notice. Presumably, more facts about this notice will surface as the litigation proceeds.

###### b. § 12-309 Notice

Pursuant to the 2010 Amendments, Plaintiff was not required to file notice, under Section 12-309 of the D.C. Code, with the D.C. Mayor's Office. However, Defendant's argument on this issue fails under either version of the statute because Defendant's only claim is that the § 12-309 notice provision bars those allegations occurring before May 18, 2009. Def.'s Mot. 5-6. As the Court has explained, supra, this argument misconstrues Plaintiff's DCWPA claim, which is based only on the RIF. Moreover, Defendant concedes that Plaintiff filed proper pre-suit notice for his RIF challenge. Def.'s Mot. 6; Compl. ¶ 153. Consequently, there are no grounds under either the earlier DCWPA or the 2010 Amendments to dismiss Plaintiff's DCWPA claim for failure to file § 12-309 notice.

For the forgoing reasons, the Court **denies** Defendant's motion to dismiss Plaintiff's DCWPA claim as barred by the statute of limitations and § 12-309 notice requirement.

###### 2. The CMPA Does Not Preempt Plaintiff's DCWPA Claim

The CMPA is "[w]ith few exceptions . . . the exclusive remedy for a District of Columbia employee who has a work-related complaint of any kind." Robinson v. District of Columbia, 748 A.2d 409, 411 (D.C. 2000) (citation omitted). The statute establishes "a merit personnel system that, among other things, provides for (1) employee 'performance ratings,' including 'corrective actions' when necessary; (2) employee discipline through 'adverse action'

-15-

proceedings; and (3) prompt handling of employee 'grievances.'" District of Columbia v. Thompson, 593 A.2d 621, 625 (D.C. 1991) (citations omitted). Under the CMPA, an employee must exhaust the applicable administrative procedures before pursuing judicial remedies. Robinson, 748 A.2d at 411. Thus, they are required to first bring their challenge to the OEA, and may thereafter appeal any adverse decision to the D.C. Superior Court and thereafter to the District of Columbia Court of Appeals. Thompson v. District of Columbia, 978 A.2d 1240, 1242 (D.C. 2009).

Defendant argues that Plaintiff's DCWPA claim is covered by the CMPA and therefore preempted by that statute's requirement to exhaust administrative remedies. Def.'s Mot. 7-9. Specifically, Defendant claims that because of CMPA preemption, Plaintiff's only recourse was to appeal the April 2010 OEA decision on his RIF to the D.C. Superior Court, which he failed to do. Id. at 8-9.

To ascertain whether the CMPA applies in this case, the Court must determine: (1) whether Plaintiff was an employee covered by the statute; and (2) whether Plaintiff's DCWPA claim qualifies as a "grievance" under the CMPA. While Plaintiff does not deny that he is a covered employee,[6] he argues that his RIF is actionable under

---

[6] According to D.C. Code § 1-602.01, the CMPA applies to "all employees of the District of Columbia government, except the Chief Judges and Associate Judges of the Superior Court of the District of Columbia and the District of Columbia Court of Appeals and the nonjudicial personnel of said Courts." While D.C. Code § 1-602.01(c) lists certain categories of D.C. employees who are
(continued...)

both the DCWPA and the CMPA. Plaintiff's Opp'n 29. Plaintiff contends that because of this "concurrent jurisdiction" he was not required to exhaust administrative remedies before bringing his DCWPA claim in federal court. Id. at 29-30.

### a. The DCWPA Does Not Require Exhaustion of Administrative Remedies

The DCWPA was passed in 1998 as an amendment to the CMPA, which was enacted in 1979. Its purpose was to "increase protection for District government employees who report waste, fraud, abuse of authority, violations of law, or threat[s] to public health or safety," and "to impose an enforceable obligation on District government supervisors to report violations of law when circumstances require, and to afford the same whistleblower protections to employees of District instrumentalities and employees of contractors who perform work on District contracts." Whistleblower Protection for Certain District Employees, 1998 D.C. Laws 12-160, Act 12-398.

It is clear that the DCWPA was intended to supplement the CMPA by "enhanc[ing] the rights of District employees to challenge the actions or failure of their agencies and to express their views without fear of retaliation," and by "provid[ing] new rights and remedies to guarantee and ensure that public offices are truly

---

[6](...continued)
excepted from the CMPA, Plaintiff does not fall into any of these groups.

public trusts." D.C. Code § 1-615.51 (1),(3). Among the rights that the DCWPA clearly and unequivocally provided was the right of D.C. employees to bring civil actions against the D.C. government to enforce whistleblower rights and protections. <u>See</u> D.C. Code § 1-615.54(a)(1) ("An employee aggrieved by a violation of [the DCWPA] may bring a civil action against the District. . . .").

As Plaintiff correctly points out, the DCWPA permits an employee to pursue both administrative and judicial remedies. D.C. Code § 1-615.56(b).[7] In addition, the statute permits an employee to completely forego administrative remedies and bring only a civil action. D.C. Code § 1-615.56(a). As the Supreme Court held in <u>Pierce County, Washington v. Guillen</u>, "[w]hen Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect." 537 U.S. 129, 145, 123 S. Ct. 720 (2003)

---

[7] Section 1-615.56 provides:

> a. The institution of a civil action pursuant to § 1.615.54 shall preclude an employee from pursuing any administrative remedy for the same cause of action from the Office of Employee Appeals or from an arbitrator pursuant to a negotiated grievance and arbitration procedure or an employment contract.

> b. An employee may bring a civil action pursuant to § 1-615.54 if the aggrieved employee has had a final determination on the same cause of action from the Office of Employee Appeals or from an arbitrator pursuant to a negotiated grievance and arbitration procedure or an employment contract.

D.C. Code § 1-615.56.

(internal quotations and citation omitted) (alteration in original). Defendant's argument that DCWPA claims are subject to the CMPA's administrative exhaustion requirement would, however, deprive the DCWPA of precisely such "real and substantial effect" because it would create a mandatory administrative scheme for DCWPA claims that Section 1-615.56 of the statute explicitly excludes. Statutory interpretations that create such "absurd results are strongly disfavored." United States v. Wilson, 290 F.3d 347, 361 (D.C. Cir 2002) (internal quotations and citation omitted).

### b. Case Law Also Fails to Establish that the CMPA Preempts Claims Brought Under the DCWPA

D.C. case law, while not extensive, also provides persuasive evidence that CMPA preemption is inapplicable to DCWPA claims. See Williams v. District of Columbia, 9 A.3d 484 (D.C. 2010)(no mention of CMPA or need to exhaust administrative remedies in case alleging violations of DCWPA); Wilburn v. District of Columbia, 957 A.2d 921 (D.C. 2008)(same); Johnson v. District of Columbia, 935 A.2d 1113 (D.C. 2007) (same).[8] Although the CMPA's administrative exhaustion

---

[8] In Raphael v. Okyiri, 740 A.2d 935 (D.C. 1999), plaintiff challenged her termination under the CMPA and also instituted a civil action in D.C. Superior Court in which claims were brought under both the CMPA and an earlier version of the whistleblower statute. Notably, plaintiff brought her civil action before exhausting her administrative remedies. See id. at 951 (noting that plaintiff's whistleblower claim constituted a "separate civil action" from her administrative proceeding and had gone to trial "less than four weeks" after plaintiff had won her administrative claim). In rendering its decision, the court did not in any way suggest that the CMPA's administrative remedies should have been
(continued...)

requirement was applied to a DCWPA claim in <u>Burton v. District of Columbia</u>, 835 A.2d 1076(D.C. 2003), plaintiff had failed to raise his argument on this issue in the proceedings below and therefore the Court of Appeals refused to consider it. Defendant provides no authority other than <u>Burton</u>, which is clearly distinguishable, applying CMPA preemption to a DCWPA claim.[9]

For the foregoing reasons, the Court **denies** Defendant's argument that the CMPA preempts Plaintiff's DCWPA claim.

---

[8](...continued)
exhausted before plaintiff brought her whistleblower action. Although <u>Raphael</u> was decided in 1999, the events at issue in that case occurred well before the DCWPA's enactment. Because the DCWPA explicitly provided that it was not applicable to claims arising before its enactment, a previous version of the D.C. whistleblower law governed the dispute. <u>Id.</u> at 937 n.1.

[9] Defendant cites other cases, all of which involve only CMPA preemption of common law and constitutional claims. Def.'s Mot. 7-8; Def.'s Reply 2-3. <u>See</u> <u>Johnson v. District of Columbia</u>, 368 F. Supp. 2d 30, 43-48 (D.D.C. 2005)(dismissing plaintiff's wrongful termination and constitutional claims as explicitly covered by CMPA and holding that issue of CMPA's applicability to tort claims should be determined in first instance by OEA), <u>aff'd</u>, 552 F.3d 806 (D.C. Cir. 2008); <u>Robinson</u>, 748 A.2d at 411-413 (holding that CMPA preempted plaintiff's tort claims); <u>Bd. of Trustees, Univ. of D.C. v. Myers</u>, 652 A.2d 642, 646-48 (D.C. 1995) (holding that breach of contract claim brought by professor against University of the District of Columbia was preempted by CMPA-sanctioned collective bargaining agreement between university and its employees); <u>District of Columbia v. Thompson,</u> 593 A.2d at 635 (holding that CMPA applied to preclude litigation of common law tort claims in the first instance).

## B.    Plaintiff's FCA Claim

The FCA prohibits individuals from "knowingly present[ing], or caus[ing] to be presented, a false or fraudulent claim for payment or approval" to the U.S. government. 31 U.S.C. § 3729(a)(1)(A). Under the statute, an employee who has been discriminated against for engaging in protected activities may bring a civil action against her employer. Section 3730(h), which is the basis of this cause of action, provides that:

> Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee . . . in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter.

31 U.S.C. § 3730(h).

To make out a claim of retaliation under the FCA, an employee must demonstrate that: "(1) he engaged in protected activity . . . and (2) he was discriminated against because of that activity." U.S. ex rel. Yesudian v. Howard Univ., 153 F.3d 731, 736 (D.C. Cir. 1998) (internal quotations and citation omitted). Where there is no direct evidence of discrimination, "the employee must . . . make two further showings. The employee must show that: (a) the employer had knowledge the employee was engaged in protected activity; and (b) the retaliation was motivated, at least in part, by the

employee's engaging in [that] protected activity." Id. (internal quotations and citations omitted) (alteration in original).

Defendant essentially argues that Plaintiff's FCA claim fails because he has not presented facts establishing a prima facie case.[10] Def.'s Mot. 10-11. This, however, is not the standard to be applied to a Rule 12(b)(6) motion to dismiss. It is well-established that this standard requires only that a complaint contain "sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." Iqbal, 129 S. Ct. at 1949 (emphasis added). A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Applying this standard, the Court will now consider whether Plaintiff has stated a plausible claim for relief under the FCA.

### 1. Engaging in Protected Activities

Under the FCA, an employee engages in protected activity when she "discloses fraud and corruption, as opposed to making a 'complaint about mere regulatory compliance.'" Kakeh v. United

---

[10] Defendant argues that Plaintiff fails the test in Yesudian for several reasons. First, Plaintiff's complaint is "devoid of facts which would lead this Court to conclude that any of the alleged irregularities reported by the plaintiff could have led to a viable [FCA] claim." Def.'s Mot. 10. Second, Plaintiff cannot show that Defendant had knowledge of his protected activities because his "complaints can be interpreted as unprotected grumbling about job dissatisfaction or regulatory violations." Id. at 11. Finally, Plaintiff cannot show that his RIF resulted from his "protected activities" because those activities occurred long before the RIF. Id.

Planning Org., Inc., 655 F. Supp. 2d 107, 117 (D.D.C. 2009)
(quoting Yesudian, 153 F.3d at 744-45). A plaintiff does not need
to have "developed a winning [case] before [she] is retaliated
against." Yesudian, 153 F.3d at 739. Rather, it is sufficient that
her disclosures "reasonably could lead" to a viable FCA case. Id.
at 740.

Plaintiff has made numerous allegations that he repeatedly
complained about D.C. officials pressuring him to rubber stamp
contracts and invoices that were fraudulent and wasteful. Compl. ¶¶
10-11, 13, 17-19, 26, 35-37. These allegations specify the
government employees involved, detail the fraudulent and wasteful
nature of these contracts and invoices, and provide information
regarding the approximate time period when the violations occurred.
Plaintiff has more than adequately pled these allegations with
sufficient particularity to reasonably lead to a viable FCA claim.
Cf. Martin-Baker Aircraft Co., 389 F.3d at 1260 (holding that on a
12(b)(6) motion plaintiff's whistleblower allegations under the FCA
are subject only to the general pleading requirements of Federal
Rule of Civil Procedure 8).

Consequently, Plaintiff has alleged sufficient facts to
demonstrate that he engaged in protected activities which
"reasonably could lead" to a viable FCA claim. Id.

## 2.    Knowledge of Plaintiff's Protected Activities

As our Court of Appeals has held, the standard for establishing employer knowledge is "flexible." Id.  Under the FCA, a plaintiff may establish such knowledge by alleging "any action which a factfinder reasonably could conclude would put the employer on notice that litigation is a reasonable possibility." Id. at 1261 (internal quotations and citation omitted). Where plaintiff alleges that he acted "outside his normal job responsibilities" or "alert[ed] a party outside the usual chain of command" to the fraudulent activity, "such action may suffice to notify the employer that the employee is engaging in protected activity." Id. (citation omitted). Plaintiff is not required to "announce he has gone outside the institution" to report an FCA violation. Yesudian, 153 F.3d at 743.

Plaintiff has made numerous allegations that, if proven, would establish Defendant's knowledge of his protected activities. Plaintiff spoke to his supervisor about the fraudulent and wasteful actions occurring in his agency. See, e.g., Compl. ¶¶ 17-18, 35-37. When his supervisor pressured him to disregard these violations and approve the offending contracts and invoices, Plaintiff went beyond the management chain and outside the OCP to complain by filing two formal complaints with the U.S. Department of Justice. Id. ¶¶ 34, 94.

Consequently, Plaintiff has presented allegations that, if proven, could lead a fact-finder to "reasonably conclude" that Defendant had knowledge of Plaintiff's protected activities.

### 3.  Causation

Defendant urges this Court to use the "temporal proximity" test to decide whether Plaintiff's termination was caused by his protected activities. Def.'s Mot. 11; Def.'s Reply 3-5. Under that test, courts determine causation based upon the lapse in time between plaintiff's protected activity and the adverse employment action. While this Circuit has used temporal proximity in certain circumstances, it has, contrary to Defendant's position, often looked beyond mere temporal proximity and evaluated causation based on the totality of a plaintiff's allegations.

Most recently, in Taylor v. Solis, 571 F.3d 1313, 1322-23 (D.C. Cir. 2009), our Court of Appeals analyzed a retaliation claim by considering both temporal proximity as well as the pattern of antagonism plaintiff suffered prior to the reprisals. Several of our district court cases have also established that a number of factors, including but not limited to temporal proximity, are relevant to evaluating causation. See Walker v. England, 590 F. Supp. 2d 113, 139 (D.D.C. 2008) (holding that "temporal proximity . . . is not the exclusive method of showing a causal connection"); Barry v. U.S. Capitol Guide Bd., No. 04-cv-0168, 2005 WL 1026703 at *6 (D.D.C. May 2, 2005) (holding that "it is clear

that after drawing all appropriate inferences in his favor [] that the plaintiff has stated a claim of retaliation even though its proximity to the protected activity would not alone support the claim"); Buggs v. Powell, 293 F. Supp. 2d 135, 149 (D.D.C. 2003) (holding that the "proffered evidence as a whole . . . created an inference of retaliatory discrimination" against plaintiff "even though [the retaliatory act's] proximity to the protected activity would not alone support such an inference").

In his Complaint, Plaintiff has presented sufficient allegations, which must be taken as true, that could lead a jury to conclude, by a preponderance of the evidence, that Plaintiff's termination was related to his protected activities. Over approximately a four year period, Defendant filed numerous formal complaints with various D.C. and government agencies alleging illegal and fraudulent contract and procurement practices taking place within his agency. According to Plaintiff, as a result of these complaints, he was repeatedly denied employment opportunities, and otherwise harassed and discriminated against by D.C. officials. This discrimination and harassment began shortly before Plaintiff's first whistleblower complaint in July 2005 and continued up until his termination in June 2009. See generally Compl. ¶¶ 10-124.

Consequently, the Court concludes that Plaintiff has made allegations, assumed to be true at this stage of the litigation,

which are sufficient to establish a claim under the FCA. The Court, therefore, **denies** Defendant's motion to dismiss Plaintiff's FCA claim under Rule 12(b)(6).

## IV.  CONCLUSION

For the reasons stated herein, the Court **denies** Defendant's Motion to Dismiss in its entirety. An Order will accompany this Memorandum Opinion.


                                    _/s/_____
June 17, 2011                       Gladys Kessler
                                    United States District Judge


**Copies via ECF to all counsel of record**